**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ———————————————— | : | |
| SOUTHEASTERN PENNSYLVANIA | : | No. 2:11-cv-01628-JHS |
| TRANSPORTATION AUTHORITY, | : | |
| individually and on behalf of all others similarly | : | Oral Argument |
| situated, | : | Courtroom 5C |
| | : | October 6, 2011, 1:30 p.m. |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| THE BANK OF NEW YORK MELLON | : | |
| CORPORATION, MELLON BANK N.A., THE | : | |
| BANK OF NEW YORK MELLON, | : | |
| | : | |
| Defendants. | : | |
| ———————————————— | : | |

**DEFENDANTS' REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS
THE SECOND AMENDED CLASS ACTION COMPLAINT**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ..................................................................................1

ARGUMENT ............................................................................................................2

I. PLAINTIFF'S RELIANCE ON OTHER CASES INVOLVING STANDING
INSTRUCTION FX TRANSACTIONS CANNOT SALVAGE ITS COMPLAINT........2

II. PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT. ................4

   A.  Plaintiff Does Not Allege that BNY Mellon Breached Any Contractual Terms.......... 4

   B.  Plaintiff Fails Adequately To Allege a Breach  Of the Implied Covenant of
Good Faith and Fair Dealing.................................................... 8

III. PLAINTIFF CANNOT ASSERT TORT OR QUASI-CONTRACT CLAIMS
BECAUSE CONTRACTS GOVERN THE MATTER IN DISPUTE. ...........................9

   A.  Plaintiff's Breach of Fiduciary Duty Claim  Is Barred by Pennsylvania's "Gist
of the Action" Doctrine..................................................... 9

   B.  Plaintiff's Unjust Enrichment Claim Is Barred by Pennsylvania Law. ...................... 10

IV. PLAINTIFF FAILS ADEQUATELY TO ALLEGE  A CLAIM FOR BREACH OF
FIDUCIARY DUTY.........................................................................11

   A.  The Contracts Between SEPTA and BNY Mellon Do Not Create  Any
Fiduciary Obligations in Connection With Standing Instruction FX Services........... 11

   B.  BNY Mellon's Role as Custodian and Trustee Does Not Make The Bank a
Fiduciary with Respect to FX Transactions as a Matter of Law................................ 13

   C.  BNY Mellon's Status as a Non-Fiduciary May Properly Be Decided on a
Motion To Dismiss. ........................................................... 15

   D.  BNY Mellon's FX Transactions with SEPTA Are Not Presumptively Void............. 16

V. PLAINTIFF'S CLAIMS ARE TIME-BARRED................................................16

   A.  The Question Whether Plaintiff's Claims Are Time-Barred May Properly Be
Decided on a Motion To Dismiss. ........................................... 16

   B.  The Discovery Rule and the Equitable Tolling Doctrine Are Inapplicable................. 17

VI. PLAINTIFF FAILS TO STATE A CLAIM AGAINST DEFENDANT BNY MELLON
CORP.....................................................................................18

VII. REFERENCES TO WALL STREET JOURNAL ARTICLES SHOULD BE
STRICKEN FROM THE COMPLAINT..........................................................................19

CONCLUSION..............................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### CASES

*Baker* v. *Family Credit Counseling Corp.*,
   440 F. Supp. 2d 392 (E.D. Pa. 2006) ........................................................................ 19

*Benak* v. *Alliance Capital Mgmt. L.P.*,
   349 F. Supp. 2d 882 (D.N.J. 2004) ........................................................................... 19

*Bohler-Uddeholm Am., Inc.* v. *Ellwood Group, Inc.*,
   247 F.3d 79 (3d Cir. 2001) ........................................................................................ 10

*Brown & Brown, Inc.* v. *Cola*,
   745 F. Supp. 2d 588 (E.D. Pa. 2010) ........................................................................ 10

*Cochran* v. *GAF Corp.*,
   666 A.2d 245 (Pa. 1995) ............................................................................................ 17

*Devon IT, Inc.* v. *IBM Corp.*,
   Civ. A. No. 10-2899, 2011 WL 1331888 (E.D. Pa. Mar. 31, 2011) ......................... 14

*Edmonson* v. *Lincoln Nat'l. Life Ins. Co.*,
   Civ. A. No. 10–4919, 2011 WL 1234889 (E.D. Pa. Apr. 1, 2011) ........................... 13

*eToll, Inc.* v. *Elias/Savion Adver., Inc.*,
   811 A.2d 10 (Pa. Super. Ct. 2002) ............................................................................ 14

*Gemini Equip. Co.* v. *Pa. Supply, Inc.*,
   595 A.2d 1211 (Pa. Super. Ct. 1991) .......................................................................... 5

*Henry* v. *First Fed. Sav. & Loan Ass'n of Greene Cnty.*,
   459 A.2d 772 (Pa. Super. Ct. 1983) ............................................................................ 5

*Hill* v. *State St. Corp.*,
   No. 09-cv-12146-NG, 2011 WL 3420439 (D. Mass. Aug. 3, 2011) ........................... 3

*Howe* v. *LC Philly, LLC*,
   Civ. A. No. 10–5495, 2011 WL 1465446 (E.D. Pa. Apr. 15, 2011) ......................... 10

*Hutchison* v. *Sunbeam Coal Corp.*,
   519 A.2d 385 (Pa. 1986) .............................................................................................. 9

*In re Lucent Techs., Inc. Sec. Litig.*,
   217 F. Supp. 2d 529 (D.N.J. 2002) ........................................................................... 19

*Kamco Indus. Sales, Inc.* v. *Lovejoy, Inc.*,
   Civ. A. No. 09-1407, 2011 WL 891825 (E.D. Pa. Mar. 10, 2011) ............................. 9

*In re Loewen Group Inc. Sec. Litig.*,
    Civ. A. No. 98-6740, 2004 WL 1853137 (E.D. Pa. Aug. 18, 2004)................................ 19

*Martin* v. *Ford Motor Co.*,
    765 F. Supp. 2d 673 (E.D. Pa. 2011) ............................................................................... 17

*McHale* v. *NuEnergy Group*,
    Civ. A. No. 01-4111, 2002 WL 321797 (E.D. Pa. Feb. 27, 2002) .................................... 9

*McHolme/Waynesburg, LLC* v. *Wal-Mart Real Estate Bus. Trust*,
    Civ. A. No. 08-961, 2009 WL 1292808 (W.D Pa. May 7, 2009)...................................... 9

*In re Mushroom Transp. Co.*,
    382 F.3d 325 (3d Cir. 2004)............................................................................................. 17

*Pocono Int'l Raceway, Inc.* v. *Pocono Produce, Inc.*,
    468 A.2d 468 (Pa. 1983) .................................................................................................. 17

*Robinson* v. *Johnson*,
    313 F.3d 128 (3rd Cir. 2002) ........................................................................................... 17

*State of California* v. *State St. Corp.*,
    No. 34-2008-00008457-CU-MC-GDS (Cal. Super. Ct. Mar. 30, 2011) ........................... 3

*Temple Univ. Hosp., Inc.* v. *Group Health, Inc.*,
    Civ. A. No. 05-102, 2006 WL 146426 (E.D. Pa. Jan. 12, 2006) ....................................... 9

*Thompson* v. *Glenmede Trust Co.*,
    Civ. A. No. 92-5233, 1993 WL 197031 (E.D. Pa. June 08, 1993) .................................. 13

*Thompson* v. *Glenmede Trust Co.*,
    Civ. A. No. 92-5233, 1994 WL 683378 (E.D. Pa. Nov. 30, 1994)............................ 13, 15

*Trizechahn Gateway LLC* v. *Titus*,
    976 A.2d 474 (Pa. 2009) .................................................................................................... 7

*Walker* v. *S.W.I.F.T. SCRL*,
    517 F. Supp. 2d 801 (E.D. Va. 2007) .............................................................................. 19

*Zaloga, D.O.* v. *Provident Life & Accident Ins. Co. of Am.*,
    671 F. Supp. 2d. 623 (M.D. Pa. 2009) .............................................................................. 9

*Zeno* v. *Ford Motor Co.*,
    480 F. Supp. 2d 825 (W.D. Pa. 2007) ............................................................................... 6

## OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(6)............................................................................................................ 17

iv

## PRELIMINARY STATEMENT

SEPTA is trying to walk away from the express terms of its written agreements with BNY Mellon, as well as from other unambiguous language that is before this Court.[1]  Thus, SEPTA argues:

- That BNY Mellon breached the contract governing pricing for FX transactions by failing to exchange currency at Interbank rates, even though the express terms of that contract allow the bank's FX rates to deviate from the Interbank rates by up to three percent.  SEPTA does not argue that BNY Mellon breached any express term of that (or any other) contract.  Instead, SEPTA impermissibly tries to import language from a BNY Mellon promotional website into the relevant contract, which is complete and unambiguous.  *See infra* at 4-7.

- That reference to "best execution" standards on BNY Mellon's current website is a retroactive pricing guarantee that overrides express contractual language governing pricing, despite that the same website expressly defines "best execution" as relating to efficient administration, not pricing.  *See infra* at 7-8.

- That BNY Mellon breached an implied covenant of good faith and fair dealing and fiduciary duties and unjustly enriched itself by failing to exchange currency with SEPTA at Interbank rates, even though these claims are premised on alleged pricing obligations that are in direct conflict with the parties' written agreement.  *See infra* at 8-9.

- That BNY Mellon breached supposed fiduciary duties created by the MTA, notwithstanding that the MTA expressly imposes fiduciary duties on BNY Mellon only if it managed the SEPTA trust funds' investments, which it is not alleged to have done.  *See infra* at 11-13.

- That BNY Mellon breached purported common law fiduciary duties as a custodian or trustee by providing FX services, notwithstanding that the MTA permits BNY Mellon to provide ancillary services to SEPTA on an arm's-length basis, the parties separately agreed to the provision of FX services, and Plaintiff cites no authority for its assertion that a custodian without discretionary investment authority has unlimited common law fiduciary obligations.  *See infra* at 11-16.

SEPTA complains that by pointing out these inconsistencies, BNY Mellon has "redraft[ed] SEPTA's allegations and offer[ed] its own version of events." (Pl.'s Br. at 5.)  BNY Mellon has done nothing of the sort, it has merely provided the Court with the very documents on which SEPTA relies and pointed out the relevant provisions.  SEPTA's fallback position – that Defendants' motion raises factual questions that are not susceptible of decision on a motion

---

[1]    Abbreviations used here are defined in Defendants' moving papers.

1

to dismiss – is merely an ineffective attempt to manufacture factual disputes where the facts are clear from the allegations in the Complaint and the relevant contracts. It is blackletter law that the Court can interpret the unambiguous contracts between the parties on a motion to dismiss.

As a final tactic to salvage its claims, SEPTA describes government inquiries and unadjudicated customer complaints about FX pricing by BNY Mellon and State Street Bank, suggesting that the Complaint should survive because the existence of those allegations means that BNY Mellon must have done *something* wrong. But those other matters – which involve different contracts between different parties – are irrelevant to this motion to dismiss. Pointing to allegations by other BNY Mellon custodial customers and customers of another custodial bank cannot excuse Plaintiff from alleging facts that adequately support *its claims*. *See infra* at 2-4.

As set forth below, the allegations in the Complaint are insufficient to survive BNY Mellon's motion to dismiss.

## ARGUMENT

### I.
### PLAINTIFF'S RELIANCE ON OTHER CASES INVOLVING STANDING INSTRUCTION FX TRANSACTIONS CANNOT SALVAGE ITS COMPLAINT.

A primary theme of Plaintiff's opposition is that the Complaint should survive because other BNY Mellon custodial clients and various government entities have made allegations or raised questions about its standing instruction FX transactions and, even more tangentially, because two courts have denied motions to dismiss in cases involving standing instruction FX transactions by another bank. Plaintiff's invocation of these other matters fails to acknowledge that they involve different custodial clients, different custodial agreements, different legal standards, and, in some cases, a different custodial bank.

The courts in *Hill* v. *State Street Corp.* and *State of California* v. *State Street Corp.* (collectively, the "State Street Cases") addressed custodial agreement language that

2

appears to be materially different from the MTA.[2]  The court in *State of California* addressed

language that said, apparently without qualification or limitation, that State Street "acknowledges

that it is a fiduciary under the [custodial] contract," leading the court to conclude it was

premature to rule, on a motion to dismiss, "[w]hether they are fiduciaries for some transactions

and not for others."  *State of California* v. *State St. Corp.*, No. 34-2008-00008457-CU-MC-GDS,

slip. op. at 2 (Cal. Super. Ct. Mar. 30, 2011) (Pl.'s Br., Ex. B).  By contrast, the MTA confines

BNY Mellon's fiduciary duties to those "established" under the MTA, and expressly defines

those fiduciary duties as ones arising out of managing the investments of SEPTA's trust funds.

(MTA §§ 5.2(a), 12.1.)  BNY Mellon, which does not manage the trust funds' investments,

therefore is not a fiduciary under the plain language of the MTA in this case.

The court in *Hill* addressed State Street custodial agreements that stated that FX

trades are "priced based on the interbank rate at the time the trade is executed."  The court held

that it could not determine the meaning of "based on" – whether it means "at" or "marked up

from" – given the record before it at the pleading stage.  *Hill* v. *State St. Corp.*, No. 09-cv-12146-

NG, 2011 WL 3420439, at *11 (D. Mass. Aug. 3, 2011).  By contrast, the MTA does not contain

*any* terms governing BNY Mellon's execution of standing instruction FX transactions for

SEPTA.  Plaintiff's contention to the contrary (Pl.'s Br. at 15-16) reflects a misunderstanding of

the MTA's provisions:  Plaintiff confuses BNY Mellon's custodial obligation to settle SEPTA's

FX transactions with other FX providers based on the directions of SEPTA's investment

managers, which *is* governed by the MTA, with BNY Mellon's exchange of currency as a

counterparty with SEPTA, which is not.  (Defs.' Br. at 7 n.4.)

Separate FX contracts between BNY Mellon on the one hand and SEPTA and its

---

[2]   The custodial agreements at issue in the State Street Cases were filed under seal and have not
been submitted to this Court, but certain relevant terms are cited in the State Street opinions.

investment managers on the other govern BNY Mellon's execution of FX transactions as a counterparty with SEPTA.  Those contracts provide only that BNY Mellon's rates will not be less favorable than the posted daily rates or deviate by more than three percent from the relevant Interbank rate.  (¶ 34.)  Thus, unlike State Street Bank, SEPTA's agreement with BNY Mellon made clear how the rates charged would relate to the Interbank rate.  SEPTA does not, and cannot, allege that BNY Mellon failed to comply with the pricing terms of the FX contracts.

Plaintiff therefore cannot overcome the plain defects in its case by riding on the coattails of other plaintiffs suing other defendants based on materially different contracts, or on the existence of allegations against BNY Mellon that no court has addressed.

**II.**
**PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT.**

**A.      Plaintiff Does Not Allege that BNY Mellon Breached Any Contractual Terms.**

Plaintiff's claim for breach of contract fails for the simple reason that Plaintiff has not identified a single provision of any relevant contract that BNY Mellon allegedly violated.  Plaintiff makes the strained argument that a statement on BNY Mellon's current promotional website – specifically, that BNY Mellon would use "best execution" standards – was part of the parties' contract and that BNY Mellon's pricing for standing instruction FX transactions was inconsistent with such standards.  But statements on BNY Mellon's website are not part of the bank's contract with SEPTA governing standing instruction FX transactions.  And even if they were, Plaintiff's proffered interpretation of the term "best execution" as requiring the bank to provide customers Interbank rates – an interpretation that is indispensable to Plaintiff's claim for breach of contract – is flatly inconsistent with the explicit definition of the term on the website.

**1.      The FX Form and the FX Procedures Constitute a Complete Contract.**

The contract between BNY Mellon and SEPTA governing standing instruction

4

FX transaction pricing consists of the FX Forms and the FX Procedures (collectively, the "FX Contract"). Those documents constitute a complete contract that makes no mention of best execution standards, a term appearing only on BNY Mellon's website. Plaintiff's assertion that the best execution language may be read into the FX Contract because that contract lacks a merger or integration clause is contrary to Pennsylvania law, under which a court may not read extrinsic terms into an unambiguous written contract where, as here, the parties did not agree to the additional terms – regardless of whether the contract contains a merger or integration clause. *Gemini Equip. Co.* v. *Pennsy Supply, Inc.*, 595 A.2d 1211, 1216 (Pa. Super. Ct. 1991); *Henry* v. *First Fed. Sav. & Loan Ass'n of Greene Cnty.*, 459 A.2d 772, 776 (Pa. Super. Ct. 1983).[3]

Plaintiff does not allege that the parties agreed to include "best execution" pricing in the FX Contract. It does not even allege that this language appeared on BNY Mellon's website when the parties entered into the FX Contract. In the absence of an agreement to make this term part of the FX Contract, it cannot become part of the contract, particularly because it is inconsistent with the FX pricing provision expressly included in the FX Contract.[4]

Plaintiff's further contention – that the "best execution" language should be inserted into the FX Contract because the contract contains no pricing provisions (Pl.'s Br. at 32-33) – is belied by the contract itself, which expressly requires BNY Mellon to publish guaranteed rates each morning and, at the direction of SEPTA's investment managers, to execute trades at

---

[3]  Plaintiff argues that the cases cited by BNY Mellon in its opening brief for the proposition that extrinsic terms may not be incorporated into a complete written contract absent the agreement of the parties are inapposite, because each of them was decided on summary judgment rather than on a motion to dismiss. (Pl.'s Br. at 32 n. 30.) Plaintiff's distinction is beside the point: those cases were decided as a matter of law based on the contract language, which is the same basis on which Defendants have moved to dismiss.

[4]  Plaintiff argues that a hyperlink to the standing instructions website, which appears on the website where BNY Mellon posts daily FX rates, causes the standing instructions website to be incorporated into the FX Contract. (Pl.'s Br. at 32, Ex. E.) Plaintiff provides no legal support for this proposition, which would represent a significant change in Pennsylvania contract law by permitting consideration of matters outside the four corners of a contract.

prices that are at least as good as the guaranteed rates and that do not deviate from the applicable Interbank rates by more than three percent.  (¶ 34.)[5]

### 2. The FX Contract's Pricing Provision For Standing Instruction FX Transactions Is Unambiguous.

Plaintiff's alternative argument – that even if the FX Contract is complete, its terms are ambiguous and thus need clarification based on parol evidence (Pl.'s Br. at 34-35) – fails because its predicate is unfounded.  The FX Contract's pricing provision for standing instruction FX transactions is unambiguous.  It requires BNY Mellon to offer a guaranteed rate each morning and, if SEPTA's investment manager elects to proceed with an FX trade with BNY Mellon, to execute the trade at a price that is no worse than the guaranteed rates and that does not deviate from the relevant Interbank rate by more than three percent.[6]

Plaintiff's contention that the term "relevant" is ambiguous fails to read the term in context:  the FX Contract makes clear that the relevant Interbank rate is the exchange rate for the particular currency pair being exchanged.  (¶ 34.)

Plaintiff's argument that the pricing provision is ambiguous because it does not explain how standing instruction FX transactions are set within the daily published rates (Pl.'s Br. at 17-18, 34-35) is another red herring, because BNY Mellon never undertook an obligation

---

[5]   *Zeno* v. *Ford Motor Co.*, 480 F. Supp. 2d 825 (W.D. Pa. 2007), cited by Plaintiff for the position that, on a motion to dismiss, a court should not determine whether statements on a website create contractual obligations (Pl.'s Br. at  33-34), is not relevant to this motion.  The question *Zeno* addressed – whether, in the absence of a written contract between the parties, the contents of a website could create contractual obligations – is not the one before this Court.  The issue here is whether the contents of a website may be read into an integrated written contract to vary its express terms.  *See Zeno*, 480 F. Supp. 2d at 848-49.

[6]   Plaintiff argues that the Court should not dismiss claims based on pre-2004 transactions because BNY Mellon has not produced the pre-2004 FX Policies.  (Pl.'s Br. at 17 n.15.)  But the Complaint addresses only the 2008 FX Procedures (¶¶ 32-34); it contains no allegations about any other agreement or obligation.  Nor does Plaintiff make any allegations about how FX transactions were priced before 2004.  Accordingly, the Complaint provides no basis for treating pre- and post-2004 FX transactions differently.

to use any particular pricing method or to disclose how it arrived at its price. BNY Mellon

complies with its contractual obligations as long as it charges rates at least as good as the daily

published ones and that do not deviate by more than three percent from the applicable Interbank

rate. Whether BNY Mellon has met these requirements is readily apparent from information

provided by the bank and from publicly available data. Accordingly, the pricing term of the FX

Contract does not need clarification by parol evidence.

Plaintiff's final argument supporting its claim that the pricing term supposedly is

ambiguous – that the provision must be ambiguous because SEPTA and other BNY Mellon

custodial clients allegedly "assumed that trades were subject to 'best execution' pricing" (Pl.'s

Br. at 35) – is unpersuasive. Any confusion on the part of other BNY Mellon clients, whose

contracts and claims are not before this Court, has no bearing on the adequacy of the Complaint.

And Plaintiff's purported failure to understand the pricing for standing instruction services – a

wholly subjective assessment – does not create ambiguity in the FX Contract pricing provision,

which, as explained above, is objectively unambiguous. *Trizechahn Gateway LLC* v. *Titus*, 976

A.2d 474, 483 (Pa. 2009) (A contract is ambiguous only "if it is reasonably susceptible of

different constructions and capable of being understood in more than one sense.") (citation

omitted).

### 3. Plaintiff's Proffered Interpretation of the Term "Best Execution" Is Inconsistent with the Definition of that Term on BNY Mellon's Website.

Even if the best execution term were read into the FX Contract, Plaintiff's claim

for breach of contract would still fail, because Plaintiff does not adequately allege that BNY

Mellon's FX transaction pricing is inconsistent with best execution standards. Plaintiff argues

that best execution means best price, relying on a definition of the term best execution taken

from the securities context. (Pl.'s Br. at 18 n.16.) Plaintiff's proffered definition is inapplicable

to the term as used on the website for numerous reasons, not least of which is that Plaintiff's definition is inconsistent with the website's express definition of the term as relating to efficient administration of FX transactions, not pricing.  (Defs.' Br. at 17 n.13).

Plaintiff also tries to impose a best price obligation on BNY Mellon by (1) attaching a BNY Mellon presentation to its brief; and (2) citing case law setting forth the unremarkable principle that technical terms should be given their technical meanings.  (Pl.'s Br. at 18 n.16.)  But the presentation appended to Plaintiff's brief as Exhibit D involves securities transactions, not FX transactions.  And Plaintiff fails adequately to allege that the term best execution has an accepted technical meaning in the FX context, let alone one relating to pricing.[7]

**B.**     **Plaintiff Fails Adequately To Allege a Breach
Of the Implied Covenant of Good Faith and Fair Dealing.**

Plaintiff argues that BNY Mellon breached the implied covenant of good faith and fair dealing by failing to execute FX transactions at "prevailing rates." (Pl.'s Br. at 37.)  As Plaintiff concedes, however, an implied duty of good faith and fair dealing cannot modify or override express terms in the contract.  (Pl.'s Br. at 36).  In this case, express contract terms address the pricing of FX transactions:  BNY Mellon publishes rates daily, and if SEPTA or its investment manager instructs BNY Mellon to exchange foreign currency with SEPTA, the rates must be at least as good as the published rates and may not deviate from Interbank rates by more than three percent.  If, as Plaintiff contends, BNY Mellon had an implied duty to use the Interbank rate when executing FX transactions with SEPTA, that duty would impose obligations that are different from the express terms of the FX Contract.  Pennsylvania law does not allow an implied duty of good faith to modify and override express contract terms in this manner.

---

[7]     Plaintiff's suggestion that best execution standards mean that BNY Mellon should use the Interbank rate for FX transactions is inconsistent with the terms of the FX Contract, which permit BNY Mellon's rates to deviate from the Interbank rate by as much as three percent.

*Hutchison* v. *Sunbeam Coal Corp.*, 519 A.2d 385, 388 (Pa. 1986).[8]

SEPTA tries to salvage its cause of action for breach of the implied covenant of good faith and fair dealing by suggesting that Pennsylvania law permits a plaintiff to plead a breach of the implied covenant even when that plaintiff pleads a separate breach of an express contract term. This is not the law. *See, e.g., McHale* v. *NuEnergy Group*, Civ. A. No. 01-4111, 2002 WL 321797, at *8 (E.D. Pa. Feb. 27, 2002) ("Pennsylvania law would not recognize a claim for breach of covenant of good faith and fair dealing as an independent cause of action separate from the breach of contract claim since the actions forming the basis of the breach of contract claim are essentially the same as the actions forming the basis of the bad faith claim."); *see also McHolme/Waynesburg, LLC* v. *Wal-Mart Real Estate Bus. Trust*, No. 08-961, 2009 WL 1292808, at *2-3 (W.D Pa. May 7, 2009) (reviewing federal and state case law on subject).

## III.
## PLAINTIFF CANNOT ASSERT TORT OR QUASI-CONTRACT CLAIMS BECAUSE CONTRACTS GOVERN THE MATTER IN DISPUTE.

**A.    Plaintiff's Breach of Fiduciary Duty Claim Is Barred by Pennsylvania's "Gist of the Action" Doctrine.**

In a transparent attempt to avoid dismissal of its claim for breach of fiduciary duty under the gist of the action doctrine, Plaintiff advances an entirely new theory of its claim. Plaintiff's original position, as reflected in the Complaint, was that BNY Mellon breached

---

[8]    The cases Plaintiff cites to contest this point involve parties acting in a way that frustrated the terms of written agreements. *See, e.g.*, *Kamco Indus. Sales, Inc.* v. *Lovejoy, Inc.*, Civ. A. No. 09-1407, 2011 WL 891825 (E.D. Pa. Mar. 10, 2011) (defendant effectively terminated an agreement in a manner inconsistent with the agreement's termination provision by reclassifying plaintiff's allocated accounts as non-commission house accounts); *Temple Univ. Hosp., Inc.* v. *Group Health, Inc.*, Civ. A. No. 05-102, 2006 WL 146426 (E.D. Pa. Jan. 12, 2006) (party unilaterally increased its rates, nullifying agreed-upon discounts); *Zaloga, D.O.* v. *Provident Life & Accident Ins. Co. of Am.*, 671 F. Supp. 2d. 623 (M.D. Pa. 2009) (defendant changed disability determination after plaintiff had been approved for disability benefits for two years). These cases are inapposite, because SEPTA does not allege that BNY Mellon priced FX transactions in a manner inconsistent with the terms of the FX Contract.

alleged fiduciary duties arising out of its provision of standing instruction FX services. (¶¶ 82(a), 84.) In its opposition papers, Plaintiff now argues that BNY Mellon breached alleged fiduciary duties arising out of the bank's role as custodian or trustee. (Pl.'s Br. at 27-30.) As a preliminary matter, Plaintiff may not reframe its breach of fiduciary duty claim in its opposition papers because the re-conceived claim is not supported by the Complaint.

Even if Plaintiff were permitted to rewrite its claim for fiduciary breach, the revised claim would still be barred under the gist of the action doctrine. The sole source of any fiduciary duty owed by BNY Mellon to SEPTA (including any such duties relating to the bank's role as custodian or trustee) is the MTA. As set forth in detail below, *infra* at Part IV.B., there is no merit in SEPTA's argument that a hazy body of common law – which Plaintiff never cites – places unlimited fiduciary duties on entities that carry the title of custodian or trustee.

Because any fiduciary obligations owed by BNY Mellon to SEPTA are created by and grounded in the MTA, a claim for breach of fiduciary duty is duplicative of Plaintiff's claim for breach of contract, and any liability for the alleged fiduciary breach stems from the MTA. Under these circumstances, Plaintiff's claim for breach of fiduciary duty is precluded by the gist of the action doctrine. *See, e.g.*, *Brown & Brown, Inc.* v. *Cola*, 745 F. Supp. 2d 588, 619-20 (E.D. Pa. 2010) (describing situations in which the gist of the action doctrine bars tort claims).[9]

**B.      Plaintiff's Unjust Enrichment Claim Is Barred by Pennsylvania Law.**

Plaintiff's insistence that it may pursue its claim for unjust enrichment as an alternative theory of liability (Pl.'s Br. at 39-40) ignores governing Pennsylvania cases holding

---

[9]   Plaintiff's reliance on *Bohler-Uddeholm Am., Inc.* v. *Ellwood Group, Inc.* is misplaced. The fiduciary duty claims at issue there (unlike Plaintiff's claim here) were not grounded in the terms of the agreements between the parties. 247 F.3d 79, 105 (3d Cir. 2001). This Court's decision in *Howe* v. *LC Philly, LLC*, is also distinguishable: that case involved a recognized exception to the gist of the action doctrine for claims of fraud in the inducement (as opposed to the performance) of the contract. Civ. A. No. 10–5495, 2011 WL 1465446, at *4 (E.D. Pa. Apr. 15, 2011).

that a plaintiff cannot maintain an action for unjust enrichment where, as here, the relationship between the parties is founded on a written agreement.  To support its position, Plaintiff relies on cases allowing a limited exception to this rule only when the validity of the underlying contract is in dispute or where the plaintiff has not alleged breach of contract.  Those cases provide no relief to Plaintiff whose Complaint alleges claims for *both* unjust enrichment and breach of contracts of undisputed validity.

## IV.
## PLAINTIFF FAILS ADEQUATELY TO ALLEGE
## A CLAIM FOR BREACH OF FIDUCIARY DUTY.

**A.   The Contracts Between SEPTA and BNY Mellon Do Not Create
Any Fiduciary Obligations in Connection With Standing Instruction FX Services.**

SEPTA's breach of fiduciary duty claim fails for the additional reason that neither the MTA nor the FX Contract confers any fiduciary obligations on BNY Mellon in connection with standing instruction FX transactions.

**1.   The Master Trust Agreement Does Not Create Any Fiduciary
Obligations in Connection with Standing Instruction FX Services.**

The MTA does not create a fiduciary relationship between BNY Mellon and SEPTA with respect to standing instruction FX transactions.  The MTA defines a "Fiduciary" as an individual appointed by SEPTA "to manage specified portions of the Master Trust Fund."[10] (MTA § 5.2(a).)  The Complaint does not allege – and SEPTA does not assert in its opposition – that BNY Mellon was appointed by SEPTA to act in that capacity during the putative class period.  Nor does the Complaint allege (and Plaintiff does not argue) that execution of standing instruction FX transactions at the direction of SEPTA's investment managers – which is all that Plaintiff alleges BNY Mellon did – constitutes management of a portion of the Master Trust

---

[10]   The MTA also states that the plan administrator, which is not BNY Mellon, "shall have the sole fiduciary duty as to such [plan] administration and [BNY Mellon] shall not be responsible in any respect for such administration."  (MTA § 3.1.)

Fund. Thus, the MTA does not place on the bank any of the fiduciary obligations alleged by Plaintiff with respect to standing instruction FX transactions.[11]

Plaintiff's assertion that BNY Mellon has "concede[d]" that it is a fiduciary to SEPTA under the MTA (Pl.'s Br. at 1, 15, 26) is a misrepresentation. BNY Mellon has done no such thing. Plaintiff's contention is based on its abridgement of a sentence in Defendants' motion papers. Plaintiff sets out BNY Mellon's statement that "[t]he MTA provided that BNY Mellon assumes certain fiduciary duties" (Pl.'s Br. at 15) but omits the rest of the sentence, which says that "those duties are limited to investment services under [the MTA] prior to the appointment of investment managers." To be clear, this case does not involve any investment services BNY Mellon may have provided before SEPTA appointed investment managers. BNY Mellon is not alleged to have provided "investment services" to SEPTA during the putative class period. BNY Mellon therefore was not a fiduciary under the MTA, and had no fiduciary obligations, in connection with the standing instruction FX transactions challenged in this case.[12]

**2.    The FX Forms and Procedures Confirm that BNY Mellon is Not a Fiduciary in Connection with Standing Instruction FX Transactions.**

The FX Forms and Procedures confirm that BNY Mellon does not act as a fiduciary when it executes standing instruction FX transactions.[13] These documents explain, clearly and concisely: (1) that when performing standing transaction FX transactions, BNY

---

[11]   Indeed, the MTA expressly permitted BNY Mellon to provide ancillary services, such as FX services, through separate "arm's length" agreements with SEPTA. (MTA § 9.1.)

[12]   SEPTA suggests that BNY Mellon had fiduciary duties under section 6.1 of the MTA, which provides in relevant part that BNY Mellon is liable for fiduciary breaches by others (such as investment managers) if the bank participates in, enables, or is aware of the breaches. (Pl.'s Br. at 22.) But Plaintiff fails to state a claim against BNY Mellon based on section 6.1, because Plaintiff never alleges any fiduciary breaches by any of its investment managers.

[13]   SEPTA's assertion that BNY Mellon's May 2, 2011 memorandum to clients "highlights the inadequacy of BNY Mellon's Class Period disclosures" is completely unfounded (Pl.'s Br. at 19-20). The May 2, 2011 memorandum is consistent with the FX Procedures and the MTA, and merely corrects misinformation about BNY Mellon's FX services contained in certain court filings and articles in the press (Defs.' Br., Ex. 10 at 2).

Mellon acts as a principal (that is, BNY Mellon is a counterparty to SEPTA, not its fiduciary); (2) the process by which BNY Mellon sets daily guaranteed FX rates; and (3) the process by which SEPTA and its investment managers can either accept or decline those rates.  (¶ 34; Defs.' Br., Exs. 5-7.)  The FX forms and procedures thus explicitly disclose that BNY Mellon does not act as SEPTA's fiduciary in connection with standing instruction FX transactions, providing ample notice to SEPTA and its investment advisors, which are highly sophisticated and financially astute entities that are well-equipped to understand the significance of the disclosures.

Even a cursory review of the FX Forms and Procedures belies SEPTA's assertion that BNY Mellon "buried" its disclosures in the FX Procedures (Pl.'s Br. at 17-18).  They appear on page one of a two-page form.  And SEPTA and its investment managers "acknowledge[d] receipt" of the FX Procedures "and agree[d] that all transactions . . . will be executed pursuant to these Procedures."  (Defs.' Br., Exs. 1 at 1, 2 at 1, 4 at 1.)  Given the clarity of the disclosures and the sophistication of SEPTA and its investment advisors, SEPTA cannot walk away from this crucial acknowledgement by claiming that it did not read or understand the disclosures.

**B.    BNY Mellon's Role as Custodian and Trustee Does Not Make
        The Bank a Fiduciary with Respect to FX Transactions as a Matter of Law.**

The law is clear that a custodian or trustee without discretionary investment authority – such as BNY Mellon with respect to standing instruction FX transactions – does not act in a fiduciary capacity (Defs.' Br. at 29-30).  Notably, Plaintiff cites no contrary cases.[14]

---

[14]   In the cases cited by Plaintiff, unlike here, the defendants managed the plaintiffs' investments or provided investment advice.  *Edmonson* v. *Lincoln Nat'l. Life Ins. Co.* holds that a life insurance company may act as fiduciary if it "invested the benefits" and "determined whether to pay the beneficiaries the total earnings from the investment," because such "actions reflect more than mere custodianship or possession of the funds."  Civ. A. No. 10–4919, 2011 WL 1234889, at *16 (E.D. Pa. Apr. 1, 2011).  Similarly, in *Thompson* v. *Glenmede Trust Co.*, the Court held that an "investment advisor/trustee" may owe its customer fiduciary duties in connection with investment advice.  Civ.A. No. 92-5233, 1994 WL 683378, at *2 (E.D. Pa. Nov. 30, 1994); *see also Thompson* v. *Glenmede Trust Co.*, Civ. A. No. 92-5233, 1993 WL

Plaintiff's argument that BNY Mellon entered into a confidential relationship with SEPTA, allegedly giving rise to common law fiduciary duties as a result of providing SEPTA and its investment managers with FX services (Pl.'s Br. at 24-26), fails under Pennsylvania law. Engaging in a commercial transaction (such as an exchange of foreign currency) does not create a confidential relationship. Thus, as the court explained in *eToll, Inc.* v. *Elias/Savion Adver., Inc.*, 811 A.2d 10 (Pa. Super. Ct. 2002):

> [A] fiduciary relationship [does not arise] merely because one party relies on and pays for the specialized skill or expertise of the other party . . . . Rather, the critical question is whether the relationship goes beyond mere reliance on superior skill, and into a relationship characterized by *"overmastering influence"* on one side or "weakness, dependence, or trust, justifiably reposed" on the other side. *Basile* v. *H & R Block*, 777 A.2d 95, 101 (Pa. Super. Ct. 2001). A confidential relationship is marked by such a disparity in position that the inferior party places complete trust in the superior party's advice and *seeks no other counsel . . . .*

*eToll*, 811 A.2d at 23 (emphasis added).

SEPTA does not assert that BNY Mellon exercised "overmastering influence" over it. Instead, SEPTA alleges that it "reposed complete trust in BNY Mellon." (Pl.'s Br. at 24; ¶ 82(b).) This allegation is insufficient to plead a confidential relationship. To plead such a relationship, SEPTA would have to allege that it "seeks no other counsel." *Id.*; *see also Devon IT, Inc.* v. *IBM Corp.*, Civ. A. No. 10-2899, 2011 WL 1331888, at *15 (E.D. Pa. Mar. 31, 2011) (Slomsky, J.) ("The [fiduciary] relationship exists when the inferior party places 'complete trust in the superior party's advice and seeks no other counsel.'") (quoting *eToll*).

SEPTA makes no such allegation. Nor can it. BNY Mellon provides SEPTA with no advice in connection with FX transactions. Like all other FX providers, BNY merely offers to exchange currency with SEPTA. Additionally, SEPTA does not place complete trust in

---

197031, at *3 (E.D. Pa. June 08, 1993) (prior case history clarifying the nature of the defendant's alleged fiduciary duties).

BNY Mellon:  SEPTA seeks and obtains "other counsel" from its investment managers, which decide in connection with every SEPTA foreign exchange transaction whether to exchange currency with BNY Mellon or with another counterparty.  (Defs.' Br. at 27-28.)

Plaintiff's conclusory response – that the cases cited by BNY Mellon for the proposition that commercial transactions do not create confidential relationships are "inapposite," without any explanation for why this is so (Pl.'s Br. at 26) – is unpersuasive.  Nor does Plaintiff distinguish the numerous cases cited by BNY Mellon that reject claims that FX providers have fiduciary obligations to their counterparties.  (Defs.' Br. at 28-29, 28 n.15.) Plaintiff provides no rationale for why the Court should find that SEPTA and BNY Mellon had a confidential relationship with respect to FX transactions.  Ultimately, Plaintiff falls back on BNY Mellon's supposed concession that it is a fiduciary – a concession that BNY Mellon never made.

**C.  BNY Mellon's Status as a Non-Fiduciary
     May Properly Be Decided on a Motion To Dismiss.**

Plaintiff takes the fallback position that fiduciary status is a question of fact that may not be decided on a motion to dismiss.  (Pl.'s Br. at 21, 30.)  But BNY Mellon's lack of fiduciary obligations to SEPTA in connection with standing instruction FX transactions is evident from the well-pleaded facts in the Complaint, the MTA, and the governing case law, which holds that custodial banks without discretionary authority are not fiduciaries.  (Defs.' Br. at 25-30.)  The Court should not hesitate to grant BNY Mellon's motion to dismiss on the ground that as a matter of law, the bank was not SEPTA's fiduciary in connection with the standing instruction FX transactions at issue in this case.  SEPTA's transparent effort to manufacture a question of fact about BNY Mellon's fiduciary status should not defeat this motion to dismiss.[15]

---

[15]   The cases Plaintiff cites to support its position that fiduciary status is a question of fact that may not be decided on a motion to dismiss are readily distinguishable.  In *Thompson* v. *Glenmede Trust Co.*, the defendants – unlike BNY Mellon – conceded that they were

**D.      BNY Mellon's FX Transactions with SEPTA Are Not Presumptively Void.**

Plaintiff argues that BNY Mellon's FX transactions with SEPTA are presumptively void because BNY Mellon purportedly breached a fiduciary duty to disclose the profits it received on those transactions.  (Pl.'s Br. at 23-24.)  This argument fails because Plaintiff never sufficiently alleges that BNY Mellon owes SEPTA fiduciary duties in connection with standing instruction FX transactions.

This argument also fails for the independent reason that the information BNY Mellon provided to SEPTA would satisfy a fiduciary's disclosure obligation.  The FX Procedures, to which SEPTA and its investment managers consented, explain that BNY Mellon acts "on a principal basis" in providing FX services to SEPTA and may provide rates deviating up to three percent from the relevant Interbank rate.  This disclosure indicates that BNY Mellon may profit from its FX transactions with SEPTA.  SEPTA and its investment managers could determine BNY Mellon's approximate margin by comparing the rate charged by the bank with the relevant Interbank rate, which was publicly available.[16]

**V.**
**PLAINTIFF'S CLAIMS ARE TIME-BARRED.**

**A.      The Question Whether Plaintiff's Claims Are Time-Barred**
**May Properly Be Decided on a Motion To Dismiss.**

Plaintiff's argument that BNY Mellon may not raise its statute of limitations defense on a motion to dismiss reflects a misunderstanding of the governing law.  The Third

---

fiduciaries.  *Thompson*, Civ.A. No. 92-5233, 1994 WL 683378, at *2-3 (E.D. Pa. Nov. 30, 1994).  In *State of California* v. *State St. Corp.* the court denied the defendant's motion to dismiss based on the terms of the relevant contract, which are materially different from the terms of the MTA.  *State of California*, No. 34-2008-00008457-CU-MC-GDS, slip. op. at 2 (Cal. Super. Ct. Mar. 30, 2011) (Pl.'s Br., Ex. B).

[16]   Plaintiff's assertion that BNY Mellon is prohibited from engaging in transactions for its own benefit with SEPTA is inconsistent with the MTA, which permits the bank to provide additional services to SEPTA and to be compensated for those services.  (MTA § 9.1.)  BNY Mellon's provision of FX services to SEPTA complies with these terms.

Circuit "permits a limitations defense to be raised by a motion under Rule 12(b)(6) . . . if the time alleged in the statement of claim shows that the cause of action has not been brought within the statute of limitations." *Robinson* v. *Johnson*, 313 F.3d 128, 135 (3rd Cir. 2002). Plaintiff alleges that BNY Mellon manipulated FX rates between 2000 and May 2, 2011. If, as Plaintiff claims, BNY Mellon breached some legal obligation in connection with standing instruction FX transactions, Plaintiff's causes of action accrued at the time of the transactions, and so Plaintiff's claims based on many of the transactions are time-barred.[17]

**B.     The Discovery Rule and the Equitable Tolling Doctrine Are Inapplicable.**

Plaintiff's invocation of the discovery rule and the doctrine of equitable tolling (Pl.'s Br. at 41-45) cannot revive its untimely claims. Both doctrines require a plaintiff to make concrete allegations that it "could not, by the exercise of reasonable diligence, have discovered information bearing on its claim." *In re Mushroom Transp. Co.*, 382 F.3d 325, 338-39 (3d Cir. 2004).[18] Plaintiff makes no such allegations, relying instead on a conclusory assertion that it could not have discovered the conduct giving rise to its causes of action until early 2011, when complaints in *qui tam* actions in Virginia and Florida were unsealed. (Pl.'s Br. at 42.)[19] But the allegations in the Complaint and other materials properly before the Court disprove this assertion. At all relevant times, Plaintiff had the tools and the data to conduct the analysis it cites

---

[17]   Plaintiff's comparison of this case to *Martin* v. *Ford Motor Co.*, 765 F. Supp. 2d 673, 686 (E.D. Pa. 2011), fails to acknowledge that in *Martin*, unlike here, it was not clear on the face of the complaint when the claims accrued.

[18]   *See also Pocono Int'l Raceway, Inc.* v. *Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983) ("As a matter of general rule, a party asserting a cause of action is under a duty to use all reasonable diligence to be properly informed of the facts and circumstances upon which a potential right of recovery is based . . . ."). Reasonable diligence entails a "reasonable effort to discover the cause of an injury under the facts and circumstance present in the case." *Cochran* v. *GAF Corp.*, 666 A.2d 245, 249 (Pa. 1995).

[19]   Plaintiff asserts that whether Plaintiff engaged in reasonable diligence is factual question that should not be decided on a motion to dismiss. (Pl.'s Br. at 43.) While this may be the general rule, it is inapplicable where, as here, the factual allegations in the Complaint demonstrate that as a matter of law Plaintiff failed to engage in reasonable diligence.

in the Complaint in support of the allegation that BNY Mellon used unfair FX rates:  Plaintiff or its investment managers could have compared the rates SEPTA received from BNY Mellon on FX transactions (which BNY Mellon disclosed) with publicly available "best and worst" Interbank rates on the days of the transactions.  That analysis would have yielded the information on which Plaintiff bases the Complaint.

Plaintiff goes on to argue that it is excused from engaging in reasonable diligence because BNY Mellon was its fiduciary and because the bank supposedly concealed relevant information from SEPTA.  (Pl.'s Br. at 43-44.)  As set forth above, BNY Mellon was not SEPTA's fiduciary with respect to FX transactions, *see supra* Part IV, and so the cases cited by Plaintiff holding that the statute of limitations is tolled when the defendant is the plaintiff's fiduciary are inapposite.  Plaintiff's argument that it is excused from performing reasonable diligence because BNY Mellon purportedly concealed information also fails.  Plaintiff contends that BNY Mellon concealed information by failing to provide time stamps for FX trades.  While the bank is alleged not to have provided time stamps, it had no obligation to do so, and so its failure to provide the stamps cannot be considered an active effort to conceal information from SEPTA that would relieve Plaintiff of its obligation to use reasonable diligence to investigate its claims.

## VI.
## PLAINTIFF FAILS TO STATE A CLAIM
## AGAINST DEFENDANT BNY MELLON CORP.

SEPTA admits that Defendant BNY Mellon Corp. provided no services to it, and that BNY Mellon Corp. cannot be held vicariously liable for the alleged misconduct of subsidiaries.  (Pl.'s Br. at 40.)  Plaintiff's argument that it can sue a parent company because funds flowed up to it from a defendant subsidiary (Pl.'s Br. at 40-41) proves too much – were it

the case, vicarious liability of a parent in any action against a subsidiary would be automatic.

The authority on which Plaintiff relies does not support this rewriting of the law.[20]

## VII.
## REFERENCES TO WALL STREET JOURNAL ARTICLES
## SHOULD BE STRICKEN FROM THE COMPLAINT.[21]

The Complaint cites to articles from THE WALL STREET JOURNAL that have no

legal significance and that should therefore be stricken from the Complaint.  Plaintiff's argument

that the articles are properly before the Court because it "explicitly relied upon" them (Pl.'s Br.

at 46-47) misstates the standard for including extraneous material (such as newspaper articles) in

a complaint.   Such material is properly cited in a complaint only if the material itself, "and not

the mere information it contains, gives rise to the legal rights asserted."  *Walker* v. *S.W.I.F.T.*

*SCRL*, 517 F. Supp. 2d 801, 806-07 (E.D. Va. 2007).  In other words, the extraneous material

must be legally significant.[22]  Here, the articles cited by Plaintiff do not give rise to the purported

legal rights asserted in the Complaint and thus are not legally significant.

---

[20]   Plaintiff relies on *Baker* v. *Family Credit Counseling Corp*., 440 F. Supp. 2d 392, 420 (E.D. Pa. 2006).  (Pl.'s Br. at 40.)  That case did not involve an uninvolved parent company, but rather a group of defendants all engaging in the same alleged activities against members of the plaintiff class.  And the cases on which *Baker* relied involved a suit by the defrauded party against the alleged wrongdoer who defrauded it through a middleman, and a suit in which subcontractors were held *not* to have an unjust enrichment claim against a bank that had foreclosed on the property of the defaulting owner.  None of these cases supports Plaintiff's argument here.

[21]   This argument is not, as Plaintiff would have it, a "toss-off."  Although the argument is made in a footnote, it is supported by citation to relevant case law.

[22]   Plaintiff tries to circumvent this requirement by citing to cases in which courts in this Circuit have considered the contents of WALL STREET JOURNAL articles.  (Pl.'s Br. at 46-47.)  In most of those cases, unlike here, the articles at issue were legally significant.  *Benak* v. *Alliance Capital Mgmt. L.P.*, 349 F. Supp. 2d 882, 889 (D.N.J. 2004) (articles were legally significant in that they put plaintiff on inquiry notice); *In re Loewen Group Inc. Sec. Litig.*, Civ. A. No. 98-6740, 2004 WL 1853137, at *6 (E.D. Pa. Aug. 18, 2004) (articles provided evidence that specific defendants had violated securities fraud laws relating to the stock *at issue in the litigation*); *In re Lucent Techs., Inc. Sec. Litig.*, 217 F. Supp. 2d 529 (D.N.J. 2002) (same).  Defendants respectfully submit that the other cases cited by Plaintiff on this point – which are not controlling – are unpersuasive and wrongly decided.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be granted and the Complaint dismissed in its entirety, with prejudice.

September 9, 2011                    Respectfully submitted,

/s/ Richard L. Scheff
Richard L. Scheff
Peter Breslauer
MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP
123 South Broad Street, 24th Floor
Philadelphia, PA 19109
Tel.  (215) 772-1500
Fax  (215) 772-7620
rscheff@mmwr.com
pbreslauer@mmwr.com

Charles E. Davidow (*Admitted Pro Hac Vice*)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, N.W.
Washington, DC  20006-1047
Tel.  (202) 223-7300
Fax  (202) 223-7420
cdavidow@paulweiss.com

Michele Hirshman (*Admitted Pro Hac Vice*)
Robyn F. Tarnofsky (*Pro Hac Vice Application Pending*)
James J. Brennan (*Admitted Pro Hac Vice*)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019 6064
Tel.  (212) 373-3000
Fax  (212) 757-3990
mhirshman@paulweiss.com
rtarnofsky@paulweiss.com
jbrennan@paulweiss.com

*Attorneys for Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 9, 2011, I caused Defendants' Reply Memorandum of Law in Further Support of their Motion to Dismiss the Second Amended Class Action Complaint to be filed using the Court's CM/ECF system, which will send e-mail notification of such filings to counsel of record.  These documents are available for viewing and downloading on the CM/ECF system.

<u>/s/ Richard L. Scheff                       </u>